(JS-6-Admin)

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE VASQUEZ, individually, and on behalf of other members of the general public similarly situated, | Case No. 8:20-cv-01494-JWH-JDEx |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [13] AND GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [9]** |
| v. | |
| RSI HOME PRODUCTS, INC.; RSI HOME PRODUCTS MANUFACTURING, INC.; and DOES 1 through 100, | |
| Defendants. | |

Before the Court are two separate but related motions:  the Motion of Plaintiff Felipe Vasquez to remand this action to the Orange County Superior Court pursuant to 28 U.S.C. § 1447[1] and the Motion of Defendant RSI Home Products, Inc. ("RSIHP") and Defendant RSI Home Products Manufacturing, Inc. ("RSI Manufacturing") (jointly "RSI") to compel individual arbitration of Vasquez's claims and to stay this action pending arbitration.[2]  The Court finds these matters appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the respective motions,[3] the Court **DENIES** Vasquez's Motion to Remand and **GRANTS** RSI's Motion to Compel Arbitration, for the reasons explained below.

## I.  BACKGROUND

### A.   Procedural Background

On July 7, 2020, Vasquez, individually and purportedly on behalf of all others similarly situated, filed his Complaint commencing this action in the Superior Court of the State of California for the Count of Orange.[4]  Vasquez asserts 10 claims for relief in his Complaint for violation of various provisions of

---

[1]     Pl.'s Mot. to Remand Pursuant to 28 U.S.C. § 1447 [Dkt. No. 13] (the "Motion to Remand" or "Pl.'s Mot.").

[2]     Defs.' Mot. to Compel Individual Arbitration and Stay Proceedings Pending Completion of Court-Ordered Arbitration [Dkt. No. 9] (the "Motion to Compel Arbitration" or "Defs.' Mot.").

[3]     The Court considered the following papers in connection with the Motion to Remand:  (1) Defs.' Notice of Removal of Civil Action to Federal Ct. (including its attachments) ("Notice of Removal") [Dkt. No. 1]; (2) Compl. [Dkt. No. 1-1]; (3) the Motion to Remand (including its attachments); (4) Defs.' Opp'n to the Motion to Remand ("Defs.' Opp'n") [Dkt. No. 21]; and (5) Pl.'s Reply in Supp. of the Motion to Remand ("Pl.'s Reply") [Dkt. No. 26].  The Court considered the following papers in connection with the Motion to Compel Arbitration:  (1) the Motion to Compel Arbitration (including its attachments); (2) Pl.'s Opp'n to the Motion to Compel Arbitration ("Pl.'s Opp'n") [Dkt. No. 14]; and (3) Defs.' Reply in Supp. of the Motion to Compel Arbitration (including its attachments) ("Defs.' Reply") [Dkt. No. 18].

[4]     *See generally* Compl.

1  the California Labor Code and the California Business and Professions Code.[5]

2  RSI filed its Answer to Vasquez's Complaint in the Orange County Superior

3  Court on August 10, 2020.[6]  On August 12, 2020, RSI removed the action to this

4  Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the Class

5  Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[7]

6      On September 3, 2020, RSI filed its Motion to Compel Arbitration.

7  Vasquez timely filed his Opposition to RSI's Motion to Compel Arbitration on

8  September 14, 2020, and RSI timely filed its Reply on September 21, 2020.

9      On September 14, 2020, Vasquez filed his Motion to Remand.  RSI timely

10  filed its Opposition to Vasquez's Motion to Remand on September 28, 2020,

11  and Vasquez timely filed his Reply on October 9, 2020.

12  **B.   Summary of Factual Allegations**[8]

13      RSI is one of the largest producers of bath and kitchen cabinetry in the

14  United States.  RSI distributes its products to multiple customers across the

15  United States.  Vasquez was employed by RSI as an hourly-paid, non-exempt

16  employee from approximately October 2015 through May 2017 at RSI's facility

17  in Anaheim, California.  Vasquez alleges that during the period from

18  approximately July 2016 through July 2020, RSI engaged in a pattern and

19  practice of wage abuse against Vasquez and the Putative Class Members

20  ("PCMs"), including failing to pay Vasquez and the PCMs for all regular and

21

22  ───────────

[5]      *See generally id.*

23  [6]      *See generally* Defs.' Answer (the "Answer") [Dkt. No. 1-5].

24  [7]      *See* Notice of Removal.

25  [8]      The Court assumes the truth of the factual allegations in Vasquez's
Complaint solely for the purpose of deciding the Motion to Remand and the
Motion to Compel Arbitration.  The Court restates Vasquez's allegations for
26  context, but it makes no determination regarding their veracity at this stage of
the case. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014)
27  (in evaluating the amount in controversy, a court assumes that the well-pleaded
allegations of the complaint are true and that the plaintiff will prevail on all
28  claims).

-3-

1 overtime wages earned and for missed meal periods and rest breaks, in violation
2 of California law.

### II.  MOTION TO REMAND

4      The Court first addresses the jurisdictional questions presented in
5 Vasquez's Motion to Remand.

### A.  Removal Jurisdiction

7      Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey
8 possess only that power authorized by Constitution and statute." *Kokkonen v.*
9 *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the
10 basis for federal jurisdiction must appear affirmatively from the record.  *See*
11 *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  "The right of
12 removal is entirely a creature of statute and a suit commenced in a state court
13 must remain there until cause is shown for its transfer under some act of
14 Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal
15 quotation marks omitted).  Where Congress has acted to create a right of
16 removal, those statutes, unless otherwise stated, are strictly construed against
17 removal jurisdiction.  *See id.*  Unless otherwise expressly provided by Congress,
18 "any civil action brought in a State court of which the district courts of the
19 United States have original jurisdiction, may be removed by the defendant or the
20 defendants, to the district court." 28 U.S.C. § 1441(a); *see Dennis v. Hart*, 724
21 F.3d 1249, 1252 (9th Cir. 2013) (same) (internal quotation marks omitted).

22      To remove an action to federal court under § 1441(a), the removing
23 defendant "must demonstrate that original subject-matter jurisdiction lies in the
24 federal courts." *Syngenta*, 537 U.S. at 33.  In other words, the removing
25 defendant bears the burden of establishing that removal is proper.  *See Abrego*
26 *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the
27 "longstanding, near-canonical rule that the burden on removal rests with the
28 removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

1 ("The strong presumption against removal jurisdiction means that the
2 defendant always has the burden of establishing that removal is proper."
3 (internal quotation marks omitted)).  Any doubts regarding the existence of
4 subject matter jurisdiction must be resolved in favor of remand.  *See id.*
5 ("Federal jurisdiction must be rejected if there is any doubt as to the right of
6 removal in the first instance.").

7       Here, RSI removed the action to this Court pursuant to 28 U.S.C. § 1441,
8 asserting jurisdiction under CAFA.  Therefore, RSI bears the burden of
9 establishing that this Court has original subject matter jurisdiction over the
10 action under CAFA.

11 **B.**   **CAFA Jurisdiction**

12      **1.**   **Legal Standard**

13       Under CAFA, the Court has "original jurisdiction of any civil action in
14 which the matter in controversy exceeds the sum or value of $5,000,000,
15 exclusive of interest and costs, and is a class action in which" there is minimal
16 diversity.  28 U.S.C. § 1332(d)(2).  To remove a case to federal court under
17 CAFA, the defendant must demonstrate that the amount in controversy exceeds
18 $5 million, exclusive of interest and costs.  *Id.*  The general rule is that a
19 removing defendant's well-pleaded amount in controversy allegations "should
20 be accepted when not contested by the plaintiff or questioned by the court."
21 *Dart Cherokee*, 574 U.S. at 87; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d
22 1193, 1197 (9th Cir. 2015) (in evaluating the amount in controversy, the court
23 first looks to the complaint).

24       However, where, as here, the plaintiff challenges the removing
25 defendant's jurisdictional allegation, under § 1446(c)(2)(B), "removal . . . is
26 proper on the basis of an amount in controversy asserted" by the defendant only
27 "if the district court finds, by the preponderance of the evidence, that the
28 amount in controversy exceeds" the jurisdictional threshold.  *Dart Cherokee*, 574

1    U.S. at 88.  "In such a case, both sides submit proof and the court decides . . .
2    whether the amount-in-controversy requirement has been satisfied."  *Id.*  The
3    preponderance of the evidence standard means that the "defendant must
4    provide evidence establishing that it is ***'more likely than not'*** that the amount in
5    controversy" meets or exceeds the jurisdictional threshold.  *Sanchez v.*
6    *Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added).
7    The defendant must set forth the underlying facts supporting its assertion that
8    the amount in controversy exceeds the statutory minimum.  *Gaus*, 980 F.2d at
9    567.  In addition to the contents of the notice of removal, the Court may
10   consider "summary-judgment-type evidence relevant to the amount in
11   controversy at the time of removal," such as affidavits or declarations.  *Ibarra*,
12   775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).
13   There is no presumption against removal jurisdiction in CAFA cases.  *Dart*
14   *Cherokee*, 574 U.S. at 89.
15       Here, as a threshold matter, the Court finds that there is minimal
16   diversity among the parties, as required by CAFA.  *See* 28 U.S.C. § 1332(d)(2).
17   Vasquez is an individual residing in Orange County, California.[9]  RSI
18   Manufacturing is a Delaware corporation that maintains its corporate
19   headquarters and principal place of business in Winchester, Virginia.[10]  Vasquez
20   alleges, on information and belief, that RSIHP is a citizen of the State of
21   California and that RSIHP does business throughout the state.[11]  RSI does not
22   provide any contrary information in its Notice of Removal.[12]  Therefore, for the
23   purpose of this analysis, the Court presumes that RSIHP is a citizen of the State
24   of California.  The fact that Vasquez and RSIHP are citizens of the same state
25
26   _____
     [9]    Compl. ¶ 5; Notice of Removal ¶ 14.
27   [10]   Notice of Removal ¶ 15.
     [11]   Compl. ¶¶ 3 & 6.
28   [12]   *See generally* Notice of Removal.

-6-

does not affect this Court's jurisdiction over this action under CAFA, however, because CAFA only requires minimal diversity and there is minimal diversity between Vasquez and RSI Manufacturing.  28 U.S.C. § 1332(d)(2)(A) (minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from ***any*** defendant" (emphasis added)); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices").

### 2.   <u>Amount in Controversy</u>

Vasquez challenges RSI's invocation of CAFA jurisdiction on the ground that RSI has not satisfied the amount in controversy requirement.[13]  Vasquez argues that RSI has not shown, by a preponderance of evidence, that the amount in controversy meets or exceeds the $5 million threshold.[14]  Furthermore, Vasquez objects to RSI's assumptions regarding violation rates and class composition.[15]  Specifically, Vasquez objects that the following assumptions underlying RSI's calculation of the amount in controversy are unreasonable: (1) a violation rate of one meal and one rest period violation per week;[16] (2) each PCM worked for 30 minutes of uncompensated overtime every week;[17] (3) each PCM worked off the clock every single workday, thereby inflating the amount in controversy for liquidated damages for failure to pay minimum wages;[18] (4) RSI waited for at least 30 days after the PCMs ended their employment to pay their

---

[13]     *See generally* Pl.'s Mot.

[14]     *See id.* at 1:3–3:15.

[15]     *See id.* at 8:2–10:9.

[16]     *Id.* at 10:16–13:19.

[17]     *Id.* at 13:23–15:12.

[18]     *Id.* at 15:16–16:5.

1  final wages and every PCM is entitled to eight hours' worth of penalties per

2  day;[19] and (5) 25% of the recovery is a reasonable estimate of attorneys' fees.[20]

3         The Court finds that the evidence submitted by RSI is sufficient to

4  establish that the amount in controversy in this case meets or exceeds the

5  $5 million amount in controversy requirement under CAFA.  In support of the

6  Notice of Removal, RSI submits the Declaration of Sandy Machado,[21] which

7  provides a summary of the underlying data and calculations derived from RSI's

8  business records.  Machado's (uncontroverted) declaration testimony satisfies

9  RSI's burden to establish the amount in controversy by a preponderance of the

10  evidence.  *See Valdez*, 372 F.3d at 1117.  Machado establishes that she has the

11  requisite personal knowledge to testify to the matters in her declaration,[22] and

12  she also includes a sufficiently detailed explanation of the underlying data and

13  the methods that she employed in analyzing the RSI employment data, as

14  explained below.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 771–

15  72 (11th Cir. 2010) (reviewing the defendant's declaration and holding that

16  "when a removing defendant makes specific factual allegations establishing

17  jurisdiction and can support them . . . with evidence combined with reasonable

18  deductions, reasonable inferences, or other reasonable extrapolations[,][t]hat

19  kind of reasoning is not akin to conjecture, speculation, or star gazing"), *cited

20  with approval in Ibarra*, 775 F.3d at 1197.

21         In contrast, Vasquez has not submitted any evidence to support his

22  arguments that RSI's assumptions are unreasonable.  *Cf. Dart Cherokee*, 574

23  U.S. at 88 (when the amount in controversy is challenged, "both sides submit

24

25  ─────────────────
   [19]      *Id.* at 16:10–19:2.

26  [20]      *Id.* at 19:6–20:12.

27  [21]      Decl. of Sandy Machado in Supp. of Notice of Removal (the "Machado
   Decl.") [Dkt. No. 1-6].

28  [22]      Machado Decl. ¶¶ 2, 3, & 5.

1  proof"). Rather, much of Vasquez's argument rests on the contention that

2  RSI's removal is deficient because RSI did not produce the underlying

3  documents that support their assumptions and calculations.[23] However, because

4  Vasquez **has not submitted any evidence** outside of the pleadings to challenge

5  RSI's jurisdictional allegations, Vasquez's arguments are in the nature of a facial

6  attack on RSI's jurisdictional allegations, rather than a factual one. *See Salter v.*

7  *Quality Carriers, Inc.*, 974 F.3d 959, 962, 963–65 (9th Cir. 2020).

8        In a typical case in which a defendant challenges the plaintiff's jurisdiction

9  allegations, a "facial attack" is one that accepts the plaintiff's allegations as true

10  but asserts that they "are insufficient on their face to invoke federal

11  jurisdiction." *Salter*, 974 F.3d at 964 (quoting *Leite v. Crane Co.*, 749 F.3d 1117,

12  1121 (9th Cir. 2014)) (quotations omitted). A "factual attack," on the other

13  hand, "contests the truth of the plaintiff's factual allegations, usually by

14  introducing evidence outside the pleadings." *Id.* (quoting *Leite*, 749 F.3d at

15  1121). Here, the roles are reversed. RSI removed the case, invoking CAFA

16  jurisdiction. RSI's Notice of Removal includes plausible jurisdictional

17  allegations that are supported by a declaration explaining how the amount in

18  controversy was calculated. In his Motion to Remand, Vasquez challenges

19  RSI's jurisdictional allegations and the underlying assumptions; however,

20  Vasquez does not submit any competing evidence in support of his arguments.

21  *Cf. Dart Cherokee*, 574 U.S. at 88; *Leite*, 749 F.3d at 1122 (the plaintiffs raised a

22  factual attack in support of which the plaintiffs submitted "extensive evidence

23  outside the pleadings"; thus, the defendants were required to support their

24  jurisdictional allegations with competent proof). As such, the only way for the

25  Court to assess the reasonableness of RSI's assumptions is to evaluate those

26  assumptions in the context of the Complaint's allegations. Therefore, the

27

28  _____
   [23]     *See* Pl.'s Mot. 10:16–20:12.

1   inquiry is focused on the facial plausibility of RSI's jurisdictional allegations, as
2   opposed to a factual inquiry where the Court weighs competing evidence. And,
3   in this sense, Vasquez misapprehends the nature of the Court's inquiry at this
4   stage of the litigation. RSI has no obligation to support removal by producing
5   extensive business records to prove or disprove **liability** or **damages** with respect
6   to Vasquez or the putative class. *See id.* at 963–65 (the notice of removal does
7   not need to contain evidentiary submissions); *Sanchez*, 102 F.3d at 404.

8          Rather, when only one party submits proof regarding the jurisdictional
9   allegations, in assessing the amount in controversy the Court assumes that the
10  well-pleaded allegations of the complaint are true and that the plaintiff will
11  prevail on all claims. *See Dart Cherokee*, 574 U.S. at 87; *Ibarra*, 775 F.3d at 1197
12  (in evaluating the amount in controversy, the Court first looks to the complaint);
13  *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the
14  amount in controversy analysis presumes that "plaintiff prevails on liability").
15  RSI, therefore, has the burden of showing that it is **more likely than not** that the
16  amount in controversy exceeds $5 million, assuming the truth of the allegations
17  pleaded in the Complaint. *See Sanchez*, 102 F.3d at 404. Accordingly, the
18  reasonableness of the assumptions that RSI makes in calculating the amount in
19  controversy turns upon the allegations of the Complaint. *See Salter*, 974 F.3d at
20  965 ("plausible [jurisdictional] allegations" necessarily rely on "reasonable
21  assumptions," and the plaintiff did not **show** that any of the assumptions were
22  unreasonable by submitting competing evidence). To this point, Vasquez
23  challenges RSI's assumptions as unreasonable, yet Vasquez fails adequately to
24  address the fact that RSI's assumptions are derived from the Complaint's
25  allegations, which Vasquez pleaded in a general and expansive way (presumably
26  for the purpose of, *inter alia*, alleging a large class of individuals). Vasquez
27  cannot use his Complaint as both a sword and a shield.

28

-10-

a.      **Complaint's Allegations Regarding the Putative Class**

Vasquez defines the proposed class as: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California."[24] Vasquez alleges that RSI jointly employed Vasquez and the PCMs as hourly-paid or non-exempt employees[25] and that Vasquez and the PCMs "worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants."[26]

b.      **RSI's Calculation of the Amount in Controversy**

In calculating the amounts in controversy for the respective categories of claims asserted by Vasquez (each of which is defined and addressed in detail below), RSI reviewed personnel, payroll, and wage data and records for the PCMs during the Relevant Period, including timekeeping records, payroll data, and wage statements.[27] The timekeeping, payroll, and employment data upon which RSI relies includes the number of days and hours worked, the dates of employment, and the hourly pay rates in effect.[28] RSI analyzes this data to determine:[29] (a) the total number of hourly-paid, non-exempt RSI employees

---

[24]     Compl. ¶ 14. Because Vasquez filed his Complaint on July 7, 2020, and based upon the definition of the proposed class, for the purpose of analyzing Vasquez's Motion to Remand, the relevant period is July 7, 2016, through July 7, 2020 (the "Relevant Period").

[25]     *Id.* at ¶¶ 18 & 19.

[26]     *Id.* at ¶ 25; *see also id.* at ¶ 38 (to similar effect).

[27]     Machado Decl. ¶¶ 3 & 5.

[28]     *Id.* at ¶ 5.

[29]     Vasquez's claims are subject to different statutes of limitations, ranging from one to four years. Accordingly, as Machado states in her declaration, RSI's data points incorporate the applicable limitation period as necessary. *See* Machado Decl. ¶¶ 6 & 7. Vasquez does not dispute RSI's methodology in this regard. *But see* Pl.'s Mot. 20:21–22:17 (discussing the statute of limitations applicable to Vasquez's claim for Non-Compliant Wage Statements).

who were employed during the Relevant Period, including the total number of current RSI employees;[30] (b) the total number of hourly-paid, non-exempt RSI employees who left their employment during the three-year time period ending on July 7, 2020 (when the Complaint was filed);[31] (c) the average recorded hours worked per workday for each hourly-paid, non-exempt RSI employee during the Relevant Period;[32] (d) the number of days each hourly-paid, non-exempt RSI employee worked during the Relevant Period;[33] (e) the average hourly pay rate in effect for each current and formerly employed RSI employees during the Relevant Period;[34] and (f) the number of wage statements issued to each hourly-paid, non-exempt RSI employee during the one-year period[35] ending on July 7, 2020.[36]

Based upon these data points, RSI determines the following:

(1)    For the one-year period ending on July 7, 2020, (a) 327 PCMs worked for RSI; and (b) those PCMs were issued a total of 7,535 payroll checks.[37]

---

[30]    Machado Decl. ¶ 6(a).  As RSI explains in its Opposition, although the putative class includes persons employed by either RSI Manufacturing or RSIHP during the Class Period, for the purpose of calculating the amount in controversy RSI did not include employees working for RSIHP.  Defs.' Opp'n 2:22–24.

[31]    Machado Decl. ¶ 6(b).

[32]    *Id.* at ¶ 6(c).

[33]    *Id.* at ¶ 6(d).

[34]    *Id.* at ¶ 6(e).

[35]    According to the Notice of Removal, the statute of limitations for Vasquez's Wage Statement Penalty claim is one year.  *See* Pl.'s Mot. 20:21–22:17; Notice of Removal ¶¶ 50 & 51.  *But see* Section II.B.g., *infra*.

[36]    Machado Decl. ¶ 6(f).

[37]    *Id.* at ¶ 7(b)(i) & (ii).

(2)    For the three-year period ending on July 7, 2020, (a) 135 PCMs separated their employment; and (b) those PCMs were paid an average effective hourly rate of $16.98 per hour.[38]

(3)    For the four-year period ending on July 7, 2020, (a) at least 486 PCMs currently work or have worked for RSI; (b) those PCMs worked a total of 301,182 workdays; (c) the PCMs worked an average of 8.61 recorded hours per workday (*excluding* non-working hours; *i.e.*, paid time off or sick time); and (d) the PCMs were paid an average effective hourly rate of $16.50 per hour.[39]

### c.   Unpaid Wage Claims

Vasquez asserts claims for Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime),[40] Violation of California Labor Code §§ 1194, 1197, & 1197.1 (Unpaid Minimum Wages),[41] and Violation of California Business and Professions Code §§ 17200, *et seq.* (collectively, the "Unpaid Wage Claims"). Vasquez alleges the following with respect to the Unpaid Wage Claims:  RSI failed to compensate the PCMs "for all hours worked and missed meal periods and/or rest breaks."[42]  During the Relevant Period, "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees"[43] including by "intentionally and willfully fail[ing] to pay overtime wages owed,"[44] to Vasquez and the PCMs.  Furthermore, Vasquez and the PCMs "worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week," but did not receive overtime pay.[45]  RSI also "failed to

---

[38]    *Id.* at ¶ 7(c)(i) & (ii).
[39]    *Id.* at ¶ 7(d)(i)–(iv).
[40]    *See* Compl. ¶¶ 48–56 (the First Claim for Relief).
[41]    *Id.* at ¶¶ 77–82 (the Fourth Claim for Relief).
[42]    *Id.* at ¶ 20.
[43]    *Id.* at ¶ 26.
[44]    *Id.* at ¶ 26.
[45]    *Id.* at ¶ 53.

1  pay minimum wage to [the PCMs] as required" under applicable California

2  law.[46]  With respect to the claims for Unpaid Overtime and Unpaid Minimum

3  Wages, Vasquez and the PCMs seek recovery of the unpaid compensation, as

4  well as well as interest, costs, and attorneys' fees."[47]  Vasquez and the PCMs

5  also seek liquidated damages in an amount equal to the unpaid wages and

6  interest thereon for their claim for Unpaid Minimum Wages.[48]  Last, with

7  respect to the claim for Violation of California Business and Professions Code

8  §§ 17200, *et seq.*, Vasquez and the PCMs seek restitution of the wages withheld,

9  attorneys' fees, and an award of costs.[49]

10      Based upon the these allegations, in calculating the amount in controversy

11  for the Unpaid Wage Claims, RSI assumes an eight-hour average workday,

12  derived from RSI's data that PCMs worked an average of 8.61 hours per

13  workday during the Relevant Period.[50]  RSI also assumes—conservatively, it

14  contends—that Vasquez and the PCMs incurred six minutes of unpaid work

15  time per workday during the Relevant Period.[51]  In calculating the amount in

16  controversy for the liquidated damages claim for Unpaid Minimum Wages, RSI

17  utilizes the lowest possible minimum wage during the limitations period ($10 per

18

19

20

21

22

---

[46]      *Id.* at ¶ 79; *see also id.* at ¶¶ 31 & 40.

23  [47]      *Id.* at ¶¶ 56 & 80.

24  [48]      *Id.* at ¶ 80.

[49]      *Id.* at ¶ 118.

25  [50]      Notice of Removal ¶24(b); Machado Decl. ¶ 7(d)(iii).  *Cf.* Compl. ¶¶ 38

26  & 53.

[51]      With these assumptions, RSI multiplies the average hourly overtime rate

27  ($24.75) by the assumed unpaid hours worked (0.10) by the total workdays
(301,182) for a total amount in controversy of $745,425.45 for the unpaid

28  overtime and minimum wages.

-14-

hour[52]).[53]  Ultimately, with these assumptions in place, RSI calculates the total amount in controversy for the Unpaid Wage Claims as $1,046,607.45.[54]

Vasquez argues that RSI's assumptions are unreasonable because they are unexplained and unsupported by documentary evidence; the assumptions fail to account for vacations, sick days, or other leaves of absence taken by PCMs; and the assumptions fail to consider that *some* PCMs *might* have worked shifts shorter than eight hours.[55]  Vasquez, however, does not propose any alternative method of calculation, nor does he submit any evidence that controverts the evidence that RSI offers in support of its assumptions.  *Cf. Salter*, 974 F.3d at 965.  Moreover, Vasquez's argument that RSI's assumptions do not account for "vacations, sick days, or other leaves of absence" is contradicted by Machado's declaration, in which she testifies that RSI's calculation of the PCMs' average workday during the Relevant Period does not include non-working hours.[56]

Vasquez's final argument is that RSI's assumption—that every PCM experienced a violation on every workday based upon the Complaint's allegation that RSI had a "pattern and practice" of wage abuse including by failing to pay overtime wages[57]—is unreasonable.[58]  However, this argument is speculative,

---

[52]   RSI explains that the current state minimum wage is $13.00 per hour and the minimum wage has been $10.50 or more per hour since January 1, 2017.  *See* Notice of Removal ¶ 33 n.6.

[53]   *Id.* at ¶¶ 32–34.  To calculate the liquidated damages, RSI multiplies the lowest minimum hourly wage ($10 per hour) by the assumed unpaid hours worked (0.10) by the total workdays (301,182) for a total amount in controversy of $301,182.  *Id.* at ¶ 33.

[54]   *Id.* at ¶¶ 30–34 ($745,425.45 + $301,182.00 = $1,046,607.45).

[55]   Pl.'s Mot. 11:22–13:19 & n.3.

[56]   Machado Decl. ¶ 7(d)(iii).

[57]   Compl. ¶ 26.

[58]   Pl.'s Mot. 11:22–13:8 & 13:23–15:12.

-15-

1  and it contradicts the allegations of the Complaint.[59]  In this regard, the Ninth
2  Circuit's decision in *Ibarra* is instructive.

3      In *Ibarra*, the Ninth Circuit held that a plaintiff's allegation that the
4  defendant had a "pattern and practice" of doing something, without an
5  allegation that the "pattern and practice" was universally followed, "does not
6  necessarily mean ***always*** doing something."  *Ibarra*, 775 F.3d at 1198–99
7  (emphasis in original).  However, as distinguished from this case, the plaintiff in
8  *Ibarra* alleged that "he worked overtime hours without compensation on
9  'multiple occasions during his employment,' suggesting that [the defendant's]
10  practices occurred several times but not on each and every shift."  *Id.* at 1199.  In
11  contrast, here, in addition to alleging a "pattern and practice,"[60] Vasquez alleges
12  that he and the PCMs "worked ***in excess*** of eight (8) hours ***in a day***, and/or ***in
13  excess*** of forty (40) hours ***in a week***"[61] and that "Defendants failed to pay
14  overtime wages to Plaintiff and the [PCMs] for all overtime hours worked."[62]

15      Thus, unlike the complaint in *Ibarra*, which the court found did not
16  unambiguously allege a universal violation of the labor laws, *see Ibarra*, 775 F.3d
17  at 1198–99, Vasquez's Complaint unambiguously alleges that the wage violation
18  occurred universally (*i.e.*, that Vasquez and the PCMs worked more than eight
19  hours per day and in excess of 40 hours per week during the Relevant Period).[63]
20  Based upon these allegations, it is reasonable for RSI to assume that Vasquez
21  and the PCMs experienced a violation every workday.

22      Accordingly, the Court finds that RSI's assumptions in calculating the
23  Unpaid Wage Claims are reasonable.

[59]  *See, e.g.*, Compl. ¶¶ 25, 38, & 53 (Vasquez and the PCMs worked more than eight hours ***per day***).
[60]  Compl. ¶ 26.
[61]  *Id.* at ¶ 53 (emphasis added); *see also id.* at ¶ 25.
[62]  *Id.* at ¶ 38.
[63]  *Id.* at ¶¶ 25, 38, & 53.

-16-

#### d.  Break Violation Claims

Vasquez also asserts claims for Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums)[64] and Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums)[65] (jointly, the "Break Violation Claims").  In support of these claims, Vasquez alleges that, during the Relevant Period, Vasquez and the PCMs "who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period."[66]  RSI also required Vasquez and the PCMs "to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked."[67]  Furthermore, RSI did so "intentionally and willfully" and failed to compensate Vasquez and the PCMs the full meal and rest period premiums for work performed during those periods."[68]  Vasquez also alleges that RSI's "pattern and practice of wage abuse" includes failing to pay Vasquez and the PCMs "for meal periods and rest breaks,"[69] failing "to provide Plaintiff and the [PCMs] all required rest and meal periods" during the Relevant Period,[70] and failing to provide "all rest periods or payment of one additional hour of pay at Plaintiff's and the [PCMs'] regular rate of pay when a rest [and/or meal] period was missed."[71]

---

[64] *Id.* at ¶¶ 57–67.
[65] *Id.* at ¶¶ 68–76.
[66] *Id.* at ¶ 63.
[67] *Id.* at ¶ 72.
[68] *Id.* at ¶¶ 64 & 73.
[69] *Id.* at ¶ 26.
[70] *Id.* at ¶ 28.
[71] *Id.* at ¶¶ 29 & 30.

1   In calculating the amount in controversy for the Break Violation Claims,
2   RSI assumes that Vasquez and the PCMs experienced an average of one meal
3   break violation and one rest break violation every workweek during the Relevant
4   Period (a 20% violation rate for every five workdays).[72]  Based upon RSI's
5   employment data,[73] RSI calculates the amount in controversy for the Break
6   Violation Claims to be $1,987,801.20.[74]

7   Vasquez argues that RSI's assumption that "every putative class member
8   experienced one meal violation and one rest period violations [*sic*] ***every***
9   ***workweek***" is unreasonable.[75]  Vasquez further argues that RSI unreasonably
10  assumes that each putative class member was eligible to receive one meal and
11  rest period for every one of the workweeks.  This assumption, Vasquez
12  contends, is unreasonable because RSI provides no evidence regarding how
13  many of the PCMs may have worked shifts of only three-and-a-half (3.5) or five
14  (5) hours, in which case those PCMs would not have been entitled to a rest or
15  meal period.[76]  The Court disagrees.

16  Vasquez offers no evidence to support his challenge to RSI's assumptions.
17  Instead, Vasquez argues that it is "possible" that some members of the putative
18  class may not have been entitled to meal or rest periods.[77]  This argument,
19  however, is conclusory and equivocal, and it is unsupported by any independent
20  evidence.  As explained above with respect to Vasquez's Unpaid Wage Claims,
21  there is no obligation that RSI support removal by producing extensive business
22  records to prove or disprove liability or damages with respect to Vasquez or the

---

24  [72]   Notice of Removal ¶¶ 37.
25  [73]   *See* Machado Decl. ¶¶ 6 & 7.
26  [74]   Notice of Removal ¶¶ 38, 39, 43, & 44.
    [75]   Pl.'s Mot. 10:18 (emphasis in original).
27  [76]   *Id.* at 11:16–13:8 & n.3.
28  [77]   *Id.* at 12:8 n.3.

-18-

1  putative class.  *See Salter*, 974 F.3d at 963–65.  Rather, where, as here, a plaintiff

2  makes general allegations regarding the frequency of violations, a defendant's

3  calculation of the amount in controversy can be based upon reasonable

4  assumptions.  *See id.*

5         With respect to the Break Violation Claims, RSI's assumptions are

6  reasonable based upon the allegations that RSI failed to provide Vasquez and the

7  PCMs "***all*** required rest and meal periods" during the Relevant Period[78] and

8  failed to provide "***all*** rest periods or payment of one additional hour of pay at

9  Plaintiff's and the [PCMs'] regular rate of pay when a rest [and/or meal] period

10 was missed."[79]  Indeed, based upon these allegations, RSI could assume a much

11 higher violation rate.  *See, e.g.*, *Alvarez v. Office Depot., Inc.*, No. 17-cv-07220,

12 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate was

13 reasonable based upon similar allegations); *Oda v. Gucci Am., Inc.*,

14 Nos. 14-cv-07468 & 14-cv-07469, 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7,

15 2015) (50% violation rate was reasonable); *Sanchez v. Russell Sigler, Inc.*,

16 No. 15-cv-01350, 2015 WL 12765359, at *3 (C.D. Cal. Apr. 28, 2015) (100%

17 violation rate was reasonable under *Ibarra*).  Yet, RSI reasonably assumes a

18 (conservative) 20% violation rate.

19        Therefore, for the foregoing reasons, the Court finds RSI's assumptions

20 to be reasonable based upon Vasquez's allegations in his Complaint.  *See, e.g.*,

21 *Nunes v. Home Depot U.S.A., Inc.*, No. 19-cv-01207, 2019 WL 4316903, at *2–3

22 (C.D. Cal. Sept. 12, 2019) (the defendant's assumption of one meal and rest

23 period violation per week was reasonable); *Salazar v. PODS Enters, LLC*,

24 No. 19-cv-00260, 2019 WL 2023726, at *2–3 (C.D. Cal. May 8, 2019) (20%

25

26

27  ───────────────
    [78]      Compl. ¶ 28 (emphasis added).

28  [79]      *Id.* at ¶¶ 29 & 30 (emphasis added).

-19-

1  violation rate was reasonable where plaintiff alleged that he and the PCMs were

2  only "occasionally authorized" to take their meal and rest breaks).

3          **e.**    <u>**Waiting Time Penalties Claim**</u>

4          Vasquez's fifth claim for relief is for Violation of California Labor Code

5  §§ 201 & 202 (the "<u>Waiting Time Penalties Claim</u>").[80]  In support of this claim,

6  Vasquez alleges that, during the Relevant Period, "Defendants intentionally and

7  willfully failed to pay Plaintiff and the [PCMs] who are no longer employed by

8  Defendants their wages, earned and unpaid, within seventy-two (72) hours of

9  their leaving Defendants' employ."[81]  Vasquez further alleges that he and the

10  PCMs are entitled to recover "the statutory penalty wages for each day they

11  were not paid up to a thirty (30) day maximum pursuant to California Labor

12  Code section 203."[82]

13          California law provides that "[i]f an employer willfully fails to pay . . . any

14  wages of an employee who is discharged or who quits, the wages of the employee

15  shall continue as a penalty from the due date thereof at the same rate until paid

16  or until an action therefor is commenced; but the wages shall not continue for

17  more than 30 days."  Cal. Lab. Code § 203(b).

18          RSI analyzes its employment data and determines that 135 RSI employees

19  were terminated during the three-year period from July 7, 2017, through July 7,

20  2020.[83]  During that same period, the PCMs' average effective hourly rate was

21  $16.98.[84]  RSI then assumes that Vasquez and the PCMs worked an average

22  eight-hour workday during the Relevant Period.[85]  Based upon this assumption,

23

24  ───────────────

25  [80]    *Id.* at ¶¶ 83–88.

25  [81]    *Id.* at ¶ 85; *see also id.* at ¶¶ 32 & 41.

26  [82]    *Id.* at ¶ 88; *see also id.* at Prayer (p. 25) ¶¶ 30–34.

27  [83]    Machado Decl. ¶ 7(c)(i); Notice of Removal ¶ 47.

27  [84]    Machado Decl. ¶ 7(c)(ii); Notice of Removal ¶ 47.

28  [85]    Notice of Removal ¶ 47.

1    RSI calculates the amount in controversy for Vasquez's Waiting Time Penalties
2    Claim as $550,152.[86]

3          Vasquez challenges RSI's assumption that every PCM is entitled to eight
4    hours' worth of penalties per day (*i.e.*, the use of a 100% violation rate).[87]
5    Vasquez further challenges RSI's assumption that RSI waited at least 30 days
6    after the 135 PCMs identified by RSI ended their employment to tender final
7    payment of their wages.[88]   With respect to the latter contention, Vasquez argues
8    that it is unreasonable for RSI to assume maximum penalties without providing
9    any evidence regarding the number of days that RSI withheld wages.[89]

10         The Court finds that RSI's assumptions in calculating the amount in
11   controversy for the Waiting Time Penalties Claim are reasonable.  Vasquez's
12   Complaint alleges that Vasquez and the PCMs "worked over eight (8) hours in a
13   day, and/or forty (40) hours in a week during their employment with
14   Defendants."[90]   As explained in the preceding sections, based upon this
15   allegation, RSI reasonably assumes that Vasquez and the PCMs worked on
16   average eight hours per day during the Relevant Period.

17         Pursuant to California Labor Code § 203(a), when an employer fails to
18   pay a discharged employee, "the wages of the employee shall continue as a
19   penalty from the due date thereof at the same rate until paid or until an action
20   therefor is commenced," with a maximum period of 30 days.  In this regard, the
21   Complaint does not contain any limitation on the Waiting Time Penalties Claim,
22   such as an allegation that Vasquez or any other PCM later received the allegedly
23   unpaid final wages at some time less than 30 days after discharge.  In the absence

24
25   [86]      *Id.* at ¶ 48 (135 PCMs x $4,075.20 (*i.e.*, $16.98 average hourly rate x 8 hours per day x 30 days)).
26   [87]      Pl.'s Mot. 16:10–19:2; Pl.'s Reply 16:18–18:5.
27   [88]      Pl.'s Mot. 16:16–16:22 & 18:18–21.
     [89]      *Id.* at 17:1–18:28.
28   [90]      Compl. ¶ 25; *see also id.* at ¶ 38 (to similar effect).

of any such limiting allegation, coupled with the allegations regarding RSI's "pattern and practice" of wage violations and the number of hours worked by Vasquez and the PCMs, RSI reasonably assumes a universal violation rate—that the 135 employees terminated during the applicable limitations period, who worked at least 8 hours per day, may seek recovery of maximum penalties for the Waiting Time Penalties Claim.  *See, e.g.*, *Lucas v. Michael Kors (USA), Inc.*, No. 18-cv-01608, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (maximum penalties was a reasonable assumption based upon similar allegations in the complaint); *Franke v. Anderson Merchandisers LLC*, No. 17-cv-03241, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (same).

Accordingly, the Court finds that RSI's calculation of the amount in controversy for the Waiting Time Penalties Claim is based upon reasonable assumptions.

### f.    Claims for Attorneys' Fees and Costs

Vasquez seeks statutory attorneys' fees in connection with each of the 10 claims for relief alleged in the Complaint.  It is well established in the Ninth Circuit that when attorneys' fees are authorized by statute, such fees must be included in the calculation of the amount in controversy.  *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) (recognizing that attorneys' fees are included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary).

Here, to calculate the amount in controversy for Vasquez's claims for attorneys' fees, RSI utilizes a 25% "benchmark" rate.[91]  *See Hanlon v. Chrysler*

---

[91]    Notice of Removal ¶¶ 54 & 55.

1    *Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  With this assumption, RSI multiplies

2    the aggregate amount in controversy on Vasquez's first through fifth, seventh,

3    and tenth causes of action (discussed above) by the 25% benchmark for a total of

4    $1,080,427.66.[92]

5         Vasquez does not contest that attorneys' fees are properly included in the

6    amount in controversy.[93]  Rather, Vasquez challenges RSI's use of the 25%

7    "benchmark" rate for calculating the amount in controversy for the claims for

8    attorneys' fees.  Vasquez, however, does not advance any substantive argument

9    why the 25% rate that RSI utilizes is unreasonable.  Vasquez merely argues, in a

10   conclusory fashion, that "Defendants presented no evidence in support of a

11   twenty-five (25%) fee," and that because there is no *per se* rule that 25% of the

12   recovery is a reasonable estimate, *see Fritsch*, 899 F.3d at 796 (there is no *per se*

13   rule that 25% is an appropriate rate), "Defendants were required to provide

14   proof that their estimate of attorneys' fees is reasonable by a preponderance of

15   the evidence."[94]

16        Here, the Court finds that the 25% rate that RSI utilizes is reasonable.

17   Indeed, the Ninth Circuit has consistently affirmed that the 25% rate is

18   reasonable.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942

19   (9th Cir. 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Six (6)*

20   *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

21   Furthermore, to the extent that RSI is required to do so, RSI provides "proof"

22   of the reasonableness of the 25% rate by citing recent cases in which Vasquez's

23   counsel has sought recovery of attorneys' fees well in excess of 25%.

24   Specifically, in the Notice of Removal, RSI cites two recent cases in which

---

[92]    *Id.* at ¶ 55 ($745,425.45 + $301,182.00 + $993,900.60 + $993,900.60 + $737,150.00 + $550,152.00 = $4,321,710.65; $4,321,710.65 x 25% = $1,080,427.66).

[93]    *See* Pl.'s Mot. 19:7–14; Pl.'s Reply 18:9–19:10.

[94]    Pl.'s Mot. 19:25–26.

Vasquez's counsel received approval of attorneys' fees awards totaling 35% of the recovery in those cases.[95]  As Vasquez correctly observes in his Motion, this Court is not bound by the settlement orders that RSI cites.  Notwithstanding, those orders are probative of the reasonableness of RSI's assumptions insofar as the orders reflect that Vasquez's counsel has sought, has received approval for, and has been awarded attorneys' fees in excess of 25% in recent cases.  Moreover, as stated above, the Ninth Circuit has repeatedly affirmed the reasonableness of the 25% rate.  *Bluetooth*, 654 F.3d at 942; *Staton*, 327 F.3d at 968; *Six Mexican Workers*, 904 F.2d at 1311.

Accordingly, RSI has sustained its burden to establish the amount in controversy for the Claims for Attorneys' Fees by a preponderance of the evidence.

### g.   Wage Statement Penalty Claim

Vasquez also asserts a claim for Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements) (the "Wage Statement Penalty Claim").  Vasquez argues that RSI's calculation of the amount in controversy should be disregarded because Vasquez agrees voluntarily to withdraw the Wage Statement Penalty claim, as the claim falls outside of the statute of limitations.[96] Although Vasquez acknowledges the general principle that, in evaluating the amount in controversy, the Court first looks to the complaint, *Ibarra*, 775 F.3d at 1197, Vasquez contends that the Court should disregard the Wage Statement Penalty Claim because Vasquez "never was entitled to that amount."[97]  Vasquez

---

[95]      Notice of Removal ¶ 55 n.14 (citing *Ferrell v. Buckingham Prop. Mgmt.*, No. 19-cv-00332, 2020 WL 4364647, at *3–4 (E.D. Cal. July 30, 2020) (granting preliminary approval of plaintiff's counsel's request for a fee award totaling 35% of the settlement amount); *Dawson v. Hitco Carbon Composites, Inc.*, No. 16-cv-07337, 2019 WL 7842550, at *9 (C.D. Cal. Nov. 25, 2019) (granting final approval of plaintiff's counsel's request for a fee award totaling 35% of the total settlement amount)).

[96]      Pl.'s Mot. 20:21–22:17; Pl.'s Reply 19:16–20:24.

[97]      Pl.'s Reply 20:13–18.

-24-

does not otherwise challenge RSI's calculation of the amount in controversy for the Wage Statement Penalty Claim.[98]  RSI argues that Vasquez cannot unilaterally dismiss his Wage Statement Penalty Claim in order to reduce the amount in controversy.[99]  The Court agrees.

In evaluating the amount in controversy, the Court assumes that the well-pleaded allegations of the complaint are true and that the plaintiff will prevail on all claims.  *See Dart Cherokee*, 574 U.S. at 87; *Ibarra*, 775 F.3d at 1197 (in evaluating the amount in controversy, the Court first looks to the complaint); *see also Burns*, 31 F.3d at 1096 (the amount in controversy analysis presumes that "plaintiff prevails on liability").  Here, Vasquez chose to bring his Wage Statement Penalty Claim and the claim was present in the operative Complaint at the time of removal.  Thus, the Wage Statement Penalty Claim is appropriately considered in calculating the amount in controversy for the purpose of removal.  Moreover, because RSI filed its Answer to Vasquez's Complaint before RSI removed this action to this Court,[100] at this stage Vasquez cannot voluntarily dismiss or "withdraw" his Wage Statement Penalty Claim unilaterally without the consent of RSI or leave of court.  *See* Fed. R. Civ. P. 41(a).

Rule 41 of the Federal Rules of Civil Procedure governs the dismissal of actions.  Pursuant to Rule 41, a plaintiff may voluntarily dismiss an action without a court order by filing "(i) a notice of dismissal ***before the opposing party serves either an answer*** or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A) (emphasis added).  Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court

---

[98]      *See* Pl.'s Mot. 20:21–22:17; Pl.'s Reply 19:16–20:24.
[99]      Defs.' Opp'n 21:2–13.
[100]     *See* Answer.

-25-

considers proper." Fed. R. Civ. P. 41(a)(2). Here, Vasquez cannot voluntarily dismiss his Wage Statement Penalty Claim under Rule 41(a)(1)(A) because RSI served its Answer on August 10, 2020.[101] And Vasquez has not filed a formal request for an order by this Court dismissing the Wage Statement Penalty Claim. *See* Fed. R. Civ. P. 41(a)(2). To the extent that Vasquez's offer to withdraw the claim can be construed as a request for dismissal under Rule 41(a)(2), the Court finds that dismissal at the current stage of the litigation would not be proper, particularly in view of the pendency of the present motions, because Vasquez did not offer to withdraw the Wage Statement Penalty Claim until after RSI answered the Complaint and filed the Notice of Removal, which was necessarily based upon the allegations in the existing Complaint. *See* Fed. R. Civ. P. 41(a)(2); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) ("A Rule 41(a)(2) motion is addressed to the sound discretion of the district court").

Furthermore, the Court is troubled by Vasquez's explanation of his offer to withdraw the Wage Statement Penalty Claim. Specifically, Vasquez states that he was "never entitled to recover" on the Wage Statement Penalty Claim due to the one-year statute of limitations.[102] Vasquez explains that based upon **RSI's statement** in the Notice of Removal that the Wage Statement Penalty Claim is subject to "a one-year statute of limitations,"[103] Vasquez reviewed "the facts and allegations in the Complaint" and agrees that he does not have standing on these claims "as his employment was terminated in 2017," and the Complaint was filed in July 2020.[104] This statement is troubling because Vasquez and his counsel had a duty to conduct a reasonable inquiry into the

---

[101]   *See id.* (Proof of Service).
[102]   Pl.'s Mot. 22:10–13.
[103]   Notice of Removal ¶ 50.
[104]   *Id.* at 21:8–14.

1    merits of the Wage Statement Penalty Claim *before* filing the Complaint.

2    Fed. R. Civ. P. 11(b)(2) & (3).

3         Vasquez's concessions notwithstanding, the statute of limitations issue is

4    not as clear cut as the parties suggest.  While California law prescribes a one-

5    year limitations period for "[a]n action upon a statute for a penalty or

6    forfeiture," Cal. Civ. Proc. Code § 340, California law also sets a three-year

7    period for "[a]n action upon a liability created by statute, other than a penalty or

8    forfeiture," Cal. Civ. Proc. Code § 338.  The plain language of the California

9    Labor Code provides for both actual damages and penalties.  *See* Cal. Lab. Code

10   § 226(e)(1); *see also Sarkisov v. StoneMor Partners, L.P.,* No. 13-cv-04834, 2014

11   WL 1340762, *2 (N.D. Cal. Apr. 3, 2014) (recognizing that two limitations

12   periods could apply to a claim under § 226 because it authorizes damages and

13   penalties); *Mouchati v. Bonnie Plants, Inc.,* No. 14-cv-00037, 2014 WL 1661245,

14   *8–9 (C.D. Cal. March 6, 2014) (same).

15        Therefore, based upon Vasquez's allegation that he and the PCMs are

16   "entitled to recover from Defendants the greater of their actual damages caused

17   by [Defendants'] failure to comply" with § 226, "or an aggregate penalty not

18   exceeding four thousand dollars per employee,"[105] depending upon the relief

19   sought, the Wage Statement Penalty Claim may be subject a three-year statute

20   of limitations (actual damages) or a one-year statute of limitations (aggregate

21   penalty).  As such, for the purpose of ruling on the present Motion to Remand, it

22   suffices that the Complaint contains plausible allegations that Vasquez was

23   personally injured by RSI's failure to provide accurate wage statements and,

24   therefore, that Vasquez has standing to assert the Wage Statement Penalty

25   Claim.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Whether Vasquez and

26   the PCMs will ultimately recover actual damages or statutory penalties is a

27

28   [105]    Compl. ¶ 100 & Prayer for Relief, ¶¶ 40 & 41.

separate issue not presently before the Court.  Accordingly, the Court finds that Vasquez's Wage Statement Penalty Claim is properly included in the amount in controversy calculation.

Considering the foregoing, the Court turns to RSI's calculation of the amount in controversy for the Wage Statement Penalty Claim.  In its Notice of Removal, RSI calculates the amount in controversy for the Wage Statement Penalty Claim based upon the one-year statute of limitations coupled with the total number of wage statements issued in that same period.[106]  RSI assumes a 100% violation rate for this claim based upon the allegation that RSI violated California Labor Code § 226 in every pay period[107] and the allegation that Vasquez and the PCMs are "entitled to recover from Defendants the greater of their actual damages caused by [Defendants'] failure to comply" with § 226 "or an aggregate penalty not exceeding four thousand dollars per employee."[108] Based upon these assertions, RSI calculates the total amount in controversy for the Wage Statement Penalty Claim to be $737,150.[109]

The Court finds RSI's calculation of the amount in controversy for the Wage Statement Penalty Claim to be reasonable.  RSI's calculation is supported by sufficient (uncontroverted) evidence, RSI's assumptions are not unreasonable based upon the allegations of the Complaint, and Vasquez does not challenge RSI's calculation or its underlying methodology.  Furthermore, although an unresolved issue remains regarding Vasquez's standing to recover penalties under § 226, the statute of limitations is an affirmative defense, the merits of which are not presently before the Court.  As discussed above, at the

---

[106]   Notice of Removal ¶ 51; Machado Decl. ¶ 7(b)(i) & (ii).
[107]   Compl. ¶ 97; *see also id.* at ¶¶ 34 & 43.
[108]   Compl. ¶ 100 & Prayer for Relief, ¶¶ 40 & 41.
[109]   Notice of Removal ¶ 51 ($16,350 (*i.e.*, 327 PCMs x $50 initial violation) + $720,800 (*i.e.*, 7,208 subsequent wage statements x $100 per violation)).

pleading stage it is sufficient that Vasquez alleges plausible facts that he was
injured by RSI's alleged failure to provide accurate wage statements.  *See Warth*,
422 U.S. at 498.  Accordingly, RSI has sustained its burden to establish, by a
preponderance of the evidence, the amount in controversy for the Wage
Statement Penalty Claim.

Based upon the foregoing, the Court finds that RSI has sustained its
burden to establish that the amount in controversy in this case exceeds
$5 million.  Therefore, having found that there is minimal diversity among the
parties and that the amount in controversy is likely to meet or exceed $5 million,
this Court concludes that it has jurisdiction over this action under CAFA.  28
U.S.C. § 1332(d).

### III.  MOTION TO COMPEL ARBITRATION

### A.   Legal Standard

Pursuant to the Federal Arbitration Act (the "FAA"), "[a] written
provision in any . . . contract evidencing a transaction involving commerce to
settle by arbitration a controversy thereafter arising out of such contract . . . shall
be valid, irrevocable, and enforceable, save upon such grounds as exist at law or
in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the
FAA "create[s] a body of federal substantive law of arbitrability applicable to
any arbitration agreement within the coverage of the Act."  *Moses H. Cone
Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  While the FAA
reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v.
Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24),
"arbitration is a matter of contract and a party cannot be required to submit to
arbitration any dispute which he has not agreed so to submit," *United
Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).
"Because the FAA mandates that 'district courts shall direct the parties to
proceed to arbitration on issues as to which an arbitration agreement has been

signed,' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and emphasis omitted) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

In evaluating the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts," *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). In this regard, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). Thus, the savings clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (quoting *Concepcion*, 563 U.S. at 339) (internal quotation marks omitted).

**B.**     **The Arbitration Agreement**

**1.**     **Presence of the Arbitration Agreement**

The threshold issue is "whether the parties agreed to arbitrate." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). Here, RSI submits evidence of the RSI Arbitration Agreement between RSI and Vasquez.[110] The RSIAA provides, in pertinent part, as follows:

> [A]ny controversy, claim or dispute between [Vasquez] and [RSI] . . . arising out of or relating to [Vasquez's] employment or cessation of [Vasquez's] employment with RSI, including, but not limited to, any state or federal statutory claims, regardless of whether the controversy is initiated by [Vasquez] or RSI, shall be submitted to final and binding arbitration before a neutral Arbitrator in Orange County, California, for determination in accordance with the American Arbitration Association's Employment Arbitration And Mediation Procedures (excluding mediation) . . . as the exclusive remedy for such controversy, claim or dispute.[111]

The RSIAA further provides:

> I AND RSI ACKNOWLEDGE AND AGREE THAT WE ARE HEREBY WAIVING ANY RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY OF THE PARTIES AGAINST THE OTHER IN CONNECTION WITH ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY

---

[110]     "RSI Home Products Employee Acknowledgment of Receipt of Employee Handbook and At-Will Employment and Arbitration Agreement (California)" (the "RSIAA"). Decl. of Sandy Machado in Support of Defs.' Mot. to Compel Arbitration ("2d Machado Decl.") [Dkt. No. 9-2] ¶ 5, Ex. A.

[111]     *Id.*

CONNECTED WITH MY EMPLOYMENT OR THE CESSATION OF MY EMPLOYMENT WITH RSI.[112]

The Court finds that RSI provides sufficient evidence of an agreement to arbitrate between RSI and Vasquez, based upon the terms of the arbitration provisions.  Vasquez does not dispute the existence of the RSIAA, nor does he contest that he signed the Agreement.[113]  Rather, Vasquez opposes arbitration principally on the ground that the RSIAA is unconscionable under California law and, therefore, unenforceable.  The Court addresses Vasquez's arguments with respect to the enforceability of the RSIAA in detail below.  As a threshold matter, however, the Court finds that the parties agreed to arbitrate.

**2.    Scope of the Arbitration Agreement**

RSI must also demonstrate that the arbitration agreement encompasses the present dispute.  *Chiron*, 207 F.3d at 1130.  "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "Absent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).

Here, in addition to the provisions quoted above, the RSIAA provides, in relevant part, that:

> [t]his bilateral arbitration agreement covers, but is not limited to, claims of unpaid wages, breach of contract, . . . violation of public policy, . . . or any other employment-related claims under laws

---

[112]   *Id.*

[113]   *See generally* Pl.'s Opp'n.

including but not limited to . . . the California Fair Employment and Housing Act, the California Labor Code, and any other state or federal statutes or laws relating to an employee's relationship with his/her employer, regardless of whether such dispute is initiated by the employee or the Company.[114]

The RSIAA further provides that it applies to any claims by RSI against Vasquez.[115]  Vasquez does not dispute that the scope of the RSIAA includes Vasquez's claims in the present action.[116]  Accordingly, based upon the terms of the RSIAA and the nature of the claims asserted by Vasquez, the Court finds that the scope of the RSIAA includes the present dispute.

### 3.   Applicability of the FAA to the RSIAA

The FAA applies to contracts "evidencing a transaction involving interstate commerce."  9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) ("[w]ith limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce" (citation omitted)).  In this regard, the Supreme Court has held that the FAA applies to employment contracts if the employment affects interstate commerce.  *Circuit City Stores*, 532 U.S. at 113 (rejecting the argument that an employment agreement is not a "contract evidencing a transaction involving interstate commerce" and holding that 9 U.S.C. § 1 does not exempt all employment contracts from the FAA).

The phrase "involving commerce" in the FAA "signals an intent to exercise Congress' commerce power to the full."  *Id.* at 115 (citing *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 277 (1995)).  Because the FAA

---

[114]   *See* 2d Machado Decl., Ex. A.
[115]   *Id.*
[116]   *See generally* Pl.'s Opp'n.

-33-

"provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,'" *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003) (quoting *Perry v. Thomas,* 482 U.S. 483, 490 (1987)), the Supreme Court has held that "the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is 'within the flow of interstate commerce,'" *id.* (citing *Allied–Bruce*, 513 U.S. at 273).

RSI contends that the FAA applies because RSI's business operations span across the United States, and, thus, its activities involve interstate commerce.[117]  Vasquez argues that RSI fails to show that Vasquez's employment, as opposed to RSI's general business operations, affected interstate commerce, and, therefore, the FAA does not apply.[118]

The Court finds that RSI has sustained its burden to establish that the FAA applies to the RSIAA.  Here, Vasquez signed the RSIAA as a condition of employment with RSI,[119] which means that the RSIAA is part of the broader general agreement to enter into an employment relationship.  RSI provides (uncontroverted) evidence that it is, and was at the time of Vasquez's employment, "one of the largest producers of bath and kitchen cabinetry in the United States, regularly shipping products across state lines via Defendants' manufacturing and distribution processes, and have operated facilities in California, North Carolina, Texas, and Mexico."[120]  Furthermore, Vasquez was employed by RSI as a Shipping Clerk, which, among other job duties, required Vasquez to coordinate the shipment of goods from RSI's Anaheim distribution center to client distribution facilities located across the western region of the

---

[117]   Defs.' Mot. 9:11–24; Defs.' Reply 1:18–4:9.

[118]   Pl.'s Opp'n 22:28–25:10.

[119]   2d Machado Decl. ¶ 5.

[120]   *Id.* at ¶ 4.

-34-

1    United States, including Oregon and Texas.[121]  This evidence is sufficient to

2    establish that the RSIAA is a contract "involving commerce."  9 U.S.C. § 2.

3         To the extent that Vasquez contends that RSI has failed to adduce

4    sufficient evidence that "the transaction . . . implicates interstate commerce"[122]

5    or "bears on commerce in a substantial way,"[123] Vasquez misapprehends the

6    standard under § 2 of the FAA.  Indeed, the Supreme Court has specifically

7    rejected this interpretation of the "involving commerce" phrase of § 2 of the

8    FAA.  In *Citizens Bank*, the Supreme Court reversed a decision by the Alabama

9    Supreme Court that held that the debt restructuring agreement at issue was not

10   subject to the FAA because the defendant failed to adduce evidence that, for

11   example, a "portion of the restructured debt was actually attributable to

12   interstate transactions" or that the loans "originated out-of-state" or that the

13   "the restructured debt was inseparable from any out-of-state projects."  *Citizens

14   Bank*, 539 U.S. at 56.  In rejecting the Alabama court's "search for evidence" in

15   this regard, the Supreme Court held that such evidence is not required under the

16   "involving commerce" phrase of § 2 of the FAA.  *Id.* ("Such evidence might be

17   required if the FAA were restricted to transactions actually 'in commerce,'

18   [citation], but, as we have explained, that is not the limit of the FAA's reach."

19   (citation omitted)).  The Court also rejected the Alabama court's reasoning that

20   the FAA did not apply because "the individual debt-restructuring transactions,

21   taken alone, did not have a 'substantial effect on interstate commerce.'"  *Id.*

22   "Congress' Commerce Clause power," the Court reasoned, "'may be exercised

23   in individual cases without showing any specific effect upon interstate

24   commerce' if in the aggregate the economic activity in question would represent

25

26   _____

     [121]    Decl. of Steve Larson in Support of Defs.' Reply [Dkt. No. 18-2] ¶ 3.

27   [122]    Pl.'s Opp'n 23:8–10.

28   [123]    *Id.* at 23:24–27 (quoting *Hoover v. American Income Life Ins. Co.*, 206
     Cal. App. 4th 1193, 1208 (2012).

1  'a general practice . . . subject to federal control.'"  *Id.* at 56–57 (quoting

2  *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236

3  (1948)).

4         Furthermore, the cases upon which Vasquez relies—*Hoover*, 206

5  Cal. App. 4th at 1193, and *Wools v. Superior Ct.*, 127 Cal. App. 4th 197 (2005)—

6  are distinguishable.  As a preliminary matter, the Court observes that *Hoover* and

7  *Wools* are California cases, which are not binding upon this Court, especially

8  considering that interpretation of the FAA is a matter of federal law, not

9  California state law.  Moreover, the facts and issues addressed in both *Hoover*

10 and *Wools* are materially different from those presently before the Court.  In

11 *Hoover*, the California Court of Appeals determined that the FAA did not apply

12 because the defendant failed to adduce ***any evidence*** to establish that a

13 relationship existed between the defendant and the plaintiff or that the

14 relationship involved interstate commerce.  *Hoover*, 206 Cal. App. 4th at 1207.

15 Similarly, in *Wools*, the court concluded that the defendant failed to make any

16 showing that the transaction at issue "involved interstate commerce."  *Wools*,

17 127 Cal. App. 4th at 213–14.  Here, in contrast, RSI has submitted

18 uncontroverted evidence that RSI's business involves interstate commerce and

19 that, at the very least, Vasquez's job duties included interactions with aspects of

20 RSI's business that involved interstate commerce.[124]

21        Accordingly, because the FAA "encompasses a wider range of

22 transactions than those actually 'in commerce,'" *Citizens Bank*, 539 U.S. at 56,

23 based upon the evidence that RSI submits, the Court finds that the RSIAA is an

24 agreement "involving interstate commerce" and is, therefore, subject to the

25 FAA.  *See, e.g.*, *id.* at 55–58; *Allied-Bruce*, 513 U.S. at 282 (relationship involved

26 interstate commerce where, among other factors, defendant was a national

27

28 [124]     *See id.*; 2d Machado Decl. ¶¶ 4 & 5.

-36-

1    corporation that was engaged in business in multiple states); *CarMax Auto*
2    *Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100–02
3    (C.D. Cal. 2015) (finding that employment contract involved interstate
4    commerce where defendant was a national corporation that did business in
5    multiple states and regularly engaged in interstate transactions, and employees
6    job duties involved engaging in interstate activates such as corresponding with
7    corporate offices in other states); *Montes v. San Joaquin Cmty. Hosp.*,
8    No. 1:13-cv-01722, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (concluding
9    that an employment contract between plaintiff and a hospital was governed by
10   the FAA because the hospital's activities were involved interstate commerce).

11   **C.    Defense Against Enforcement of the Arbitration Agreement:**
12           **Unconscionability**

13           Even where a valid arbitration agreement exists, the agreement is subject
14   to general contract defenses. *See Concepcion*, 563 U.S. at 339. "Any doubts
15   about the scope of arbitrable issues, including applicable contract defenses, are
16   to be resolved in favor of arbitration." *Poublon v. C.H. Robinson Co.*, 846 F.3d
17   1251, 1259 (9th Cir. 2017). A court must, therefore, determine whether the
18   arbitration agreement is enforceable under the laws of the state where the
19   contract was formed. *Ingle*, 328 F.3d at 1170.

20           Here, there is no dispute that California law governs the issue of the
21   enforceability of the RSIAA. Vasquez argues that the RSIAA is procedurally
22   and substantively unconscionable, and, therefore, unenforceable. In California,
23   contractual unconscionability has both a procedural and a substantive
24   component. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83,
25   114 (2000). To establish the defense of unconscionability, "the party opposing
26   arbitration must demonstrate that the contract as a whole or a specific clause in
27   the contract is ***both*** procedurally and substantively unconscionable." *Poublon*,
28   846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899,

910 (2015)) (emphasis added).  California utilizes a sliding scale to determine unconscionability:  "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

As a preliminary matter, the Court addresses Vasquez's argument that the RSIAA must be construed together with the Confidentiality Agreement that Vasquez also signed as part of his broader employment agreement with RSI.[125] Under California law, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  Cal. Civ. Code § 1642.  The question of "whether Civil Code § 1642 applies in a particular case is a question of fact for resolution by the trial court."  *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1675 (1996).  RSI contends that § 1642 does not apply here because the RSIAA and the Confidentiality Agreement relate to different matters.  The Court disagrees. The parties do not dispute that the RSIAA and the Confidentiality Agreement were executed as part of the broader employment agreement between RSIAA and Vasquez.  Therefore, for the purpose of this analysis, the Court finds that § 1642 applies to the RSIAA and the Confidentiality Agreement.  However, as explained in detail below, this finding is not dispositive of the enforceability of the RSIAA.

### 1.   <u>Rulings on Evidentiary Objections</u>

RSI objects[126] to portions of the declaration[127] that Vasquez submits in support of his Opposition to RSI's Motion to Compel Arbitration.  The Court

---

[125]   *See* Pl.'s Opp'n.

[126]   Defs.' Evidentiary Objs. to Decl. of Felipe Vasquez in Supp. of Pl.'s Opp'n ("<u>Defs.' Evidentiary Obj.</u>") [Dkt. No. 18-1].

[127]   Decl. of Felipe Vasquez in Supp. of Pl.'s Opp'n ("<u>Vasquez Decl.</u>") [Dkt. No. 14-1].

**SUSTAINS** RSI's evidentiary objections and **STRIKES** Vasquez's testimony as follows:

- RSI's evidentiary objection to ¶ 3 is **SUSTAINED**, in part, with respect to the statement, "Aside telling [*sic*] me that the documents were a requirement for working at RSI,"[128] as inadmissible hearsay. Fed. R. Evid. 802.

- RSI's evidentiary objection to ¶ 3 is **SUSTAINED**, in part, with respect to the statement, "I was not given sufficient time to review all the documents,"[129] as speculation and improper legal conclusion. Notably, Vasquez does not state that he ***did not*** review all the documents, nor does he dispute that he signed the RSIAA and other employment documents. The statement is also an improper lay opinion. Fed. R. Evid. 701 & 702.

- RSI's objection to ¶ 4 is **SUSTAINED**, in part, with respect to the statement, "I could not negotiate the terms of the forms or refuse to sign if I wanted to keep my job,"[130] as speculation and improper legal conclusion. The statement is also an improper lay opinion. Fed. R. Evid. 701 & 702.

- RSI's objection to ¶ 6 is **SUSTAINED**, in part, with respect to the statement, "Consistent with this practice, I would not have signed any document unless it was a requirement of my employment with RSI,"[131] as speculation. Fed. R. Evid. 602.

RSI's remaining evidentiary objections are **OVERRULED**.

---

[128] *Id.* at ¶ 3:17–18.
[129] *Id.* at ¶ 3:20–21.
[130] *Id.* at ¶ 4:24–25.
[131] *Id.* at ¶ 5:7–10.

2.   **Procedural Unconscionability**

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). This element of unconscionability focuses on whether there is "oppression or surprise due to unequal bargaining power." *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). Oppression "arises from an inequality in bargaining power which results in no real negotiation and an absence of meaningful choice." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1531 (1997). Surprise is defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Gatton v. T–Mobile USA, Inc.,* 152 Cal. App. 4th 571, 581 (2007) (citation and quotations omitted).

In the employment context, the Ninth Circuit has affirmed that the requirement by an employer that an employee sign a mandatory arbitration agreement, without more, does not constitute oppression that renders the arbitration agreement procedurally unconscionable. *Poublon*, 846 F.3d at 1263 ("[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'" (citation omitted)).

Vasquez argues that the RSIAA is procedurally unconscionable because the RSIAA was presented as "take it or leave it" with no opportunity to negotiate[132] and because Vasquez was not afforded an opportunity to review the

---

[132]   Pl.'s Opp'n 7:27–10:20.

1  RSIAA.[133]  In his declaration in support of these arguments, Vasquez states that
2  he was not given a sufficient opportunity to review the terms of the RSIAA and
3  that he understood that the forms had to be signed.[134]  RSI argues that there is no
4  *per se* rule that contracts signed as a condition of employment are procedurally
5  unconscionable "adhesion" contracts and that Vasquez has otherwise failed to
6  show procedural unconscionability.[135]

7        The Court finds that Vasquez has presented sufficient evidence to show
8  that the RSIAA was procedurally unconscionable.  Generally, under California
9  law, a pre-dispute mandatory arbitration agreement made as a condition of
10  employment is procedurally unconscionable.  *See Bridge Fund Capital Corp. v.*
11  *Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law
12  treats contracts of adhesion, or at least terms over which a party of lesser
13  bargaining power had no opportunity to negotiate, as procedurally
14  unconscionable to at least some degree"); *Ingle*, 328 F.3d at 1170(it is
15  "procedurally unconscionable to require employees, as a condition of
16  employment, to waive their right to seek redress of grievance in a judicial
17  forum"); *Armendariz*, 24 Cal. 4th at 113 (employer's arbitration agreement was
18  procedurally unconscionable because it was adhesive, it was imposed on
19  employees as a condition of employment, and there was no opportunity for them
20  to negotiate); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 114
21  (2004) (employer's arbitration agreement was procedurally unconscionable
22  because it was "a prerequisite of his employment" and the employee did not
23  have an "opportunity to negotiate or refuse to sign the arbitration agreement").

---

26  [133]    *Id.* at 10:21–11:2.
27  [134]    Vasquez Decl. ¶¶ 3–5 (subject to the Court's rulings on RSI's evidentiary objections set forth above).
28  [135]    Defs.' Reply 7:8–10:2.

1    However, the Court further finds that the degree of procedural

2    unconscionability is minimal.  *See Armendariz*, 24 Cal. 4th at 114 ("[T]he more

3    substantively oppressive the contract term, the less evidence of procedural

4    unconscionability is required to come to the conclusion that the term is

5    unenforceable, and vice versa.").  Notably, Vasquez does not state that he did

6    not read the RSIAA, that he did not understand the terms of the RSIAA, or that

7    he wanted to negotiate the terms of the RSIAA but was denied an opportunity to

8    do so.[136]  Furthermore, Vasquez does not claim to have been surprised by the

9    RSIAA, nor does he claim to have been "lied to, placed under duress, or

10   otherwise manipulated into signing the arbitration agreement."[137]  *Cf. Baltazar*

11   *v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (finding minimal procedural

12   unconscionability where the arbitration agreement was a contract of adhesion

13   but there was no surprise or duress toward plaintiff).  On the facts here, the

14   quantum of procedural unconscionability is small.

15        **3.    Substantive Unconscionability**

16        Substantive unconscionability focuses "on overly harsh or one-sided

17   results."  *Armendariz*, 24 Cal. 4th at 114.  An arbitration clause is substantively

18   unconscionable if "the terms of the agreement . . . are so one-sided as to shock

19   the conscience."  *Kinney*, 70 Cal. App. 4th at 1329.  The mutuality of the

20   agreement is the "paramount consideration" in assessing substantive

21   unconscionability.  *Pokorny v. Quixtar*, 601 F.3d 987, 997–98 (9th Cir. 2010).

22   "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to

23   avoid unconscionability."  *Id.* (internal citations and quotations omitted).

24   Whether an arbitration agreement is sufficiently bilateral is determined by an

25   examination of the actual effects of the challenged provisions.  *Ellis v. McKinnon*

26

27   _____

[136]     *See* Vasquez Decl. ¶¶ 3–5 (subject to the Court's rulings on RSI's
     evidentiary objections set forth above).

28   [137]     *Cf. id.*

1   *Broad. Co.,* 18 Cal. App. 4th 1796, 1803 (1993) ("Substantive unconscionability
2   . . . refers to an overly harsh allocation of risks or costs which is not justified by
3   the circumstances under which the contract was made.").

4          Vasquez argues that the RSIAA is substantively unconscionable because it
5   lacks mutuality of the obligation to arbitrate,[138] it improperly permits unilateral
6   modification by RSI,[139] and it does not provide for attorneys' fees and costs to a
7   prevailing plaintiff.[140]  RSI contends that Vasquez's argument regarding
8   mutuality fails because it is undisputed that the RSIAA provides for mutually
9   binding arbitration and because the provisions of the Confidentiality Agreement
10  have no bearing on the enforceability of the RSIAA.[141]  And even if the
11  Confidentiality Agreement were to be construed with the RSIAA, the specific
12  language of the RSIAA prevails over the more general language of the
13  Confidentiality Agreement.[142]  RSI further argues that the RSIAA does not
14  contain any provision that suggests that the RSIAA is subject to unilateral
15  modification.[143]  Last, RSI argues that Vasquez's argument regarding the
16  absence of a provision for attorneys' fees and costs is specious and unsupported
17  by any citation to authority.[144]

18         The Court finds that Vasquez has not sustained his burden to establish
19  that the RSIAA is substantively unconscionable.  The Supreme Court has made
20  it clear that only challenges to "the validity of the agreement to arbitrate"—as
21  opposed to "other challenges [to] the contract as a whole"—are "relevant to a
22  court's determination whether the arbitration agreement at issue is

23  _____
24  [138]   Pl.'s Opp'n 11:16–15:5.
    [139]   *Id.* at 15:7–18:12.
25  [140]   *Id.* at 18:14–28.
    [141]   Defs.' Mot. 10:3–10:27.
26  [142]   *Id.* at 11:1–13.
    [143]   *Id.* at 11:14–12:3.
27  [144]   *Id.* at 12:4–22.
28

enforceable." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)
(citing *Preston v. Ferrer*, 552 U.S. 346, 353–54 (2008); *Buckeye Check Cashing,
Inc. v. Cardegna*, 546 U.S. 440, 444–46 (2006); *Prima Paint Corp. v. Flood &
Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).  In this regard, the Supreme
Court explained that "because § 2 states that a 'written provision' 'to settle by
arbitration a controversy' is 'valid, irrevocable, and enforceable' ***without
mention*** of the validity of the contract in which it is contained," a challenge "to
another provision of the contract, or to the contract as a whole, does not prevent
a court from enforcing a specific agreement to arbitrate."  *Id.* (emphasis in
original).  Therefore, "as a matter of substantive federal arbitration law, an
arbitration provision is severable from the remainder of the contract."  *Id.* at 70–
71 (quoting *Buckeye*, 546 U.S. at 445).

Here, Vasquez's arguments regarding mutuality and unilateral
modification do not contend that the RSIAA itself is substantively
unconscionable.  Indeed, Vasquez acknowledges that the RSIAA contains all of
the key words of mutuality[145] and that the unilateral modification provision is
contained in the RSI Employee Handbook—not the RSIAA.[146]  Instead, Vasquez
argues that the RSIAA must be evaluated together with the Confidentiality
Agreement and the RSI Employee Handbook—which Vasquez argues contain
unconscionable provisions—because each of those agreements was part of the
broader employment contract between Vasquez and RSI.  But, under binding
Supreme Court precedent, Vasquez's challenges to the Confidentiality

---

[145]     Pl.'s Opp'n 13:4–20 (admitting that "the Arbitration Agreement . . .
provides all the key words of mutuality" and proceeding to argue that the
RSIAA is unconscionable due to the unilateral terms of the Confidentiality
Agreement); *see also id.* at 13:21–15:5.

[146]     *Id.* at 15:24–16:7 (quoting from the RSI Employee Handbook that
"revisions to the Handbook may occur at the sole discretion of RSI"); *see also id.*
at 16:8–14 & 18:6–9 ("based on this provision [of the RSI Employee Handbook]
Defendants are ***essentially*** permitted to alter the terms of the agreement"
(emphasis added)).

1   Agreement and the RSI Employee Handbook are irrelevant to this Court's

2   determination regarding whether the RSIAA is enforceable.  *Rent-A-Center*,

3   561 U.S. at 70–71.  Additionally, to the extent that Vasquez argues otherwise,

4   the Court finds that Vasquez's argument with respect to unilateral modification

5   is based ***entirely*** upon the terms of the RSI Employee Handbook.  On its face,

6   the RSIAA does not include any terms providing for unilateral modification by

7   RSI.  *Cf. Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1467

8   (2012) (finding arbitration agreement substantively unconscionable where the

9   ***arbitration agreement*** contained a unilateral "Term, Modification, and

10   Revocation" clause).

11          Finally, Vasquez does not cite any authority to support his argument that

12   the RSIAA must provide for attorneys' fees to the prevailing plaintiff, nor has

13   the Court's independent research found any authority to support this

14   proposition.  Therefore, the Court finds that the RSIAA is not substantively

15   unconscionable on this ground.

16          Accordingly, for the foregoing reasons, the Court finds that Vasquez has

17   not sustained his burden to show that the RSIAA is substantively

18   unconscionable.

19   **D.      Requests to Stay and to Dismiss Class Claims**

20          Pursuant to § 3 of the FAA, once the Court determines that a matter is

21   properly referred to arbitration under a written arbitration agreement, the Court

22   shall, in response to the request of a party, stay the action pending the

23   completion of arbitration.  9 U.S.C. § 3; *see also Ziober v. BLB Resources, Inc.*, 839

24   F.3d 814, 817 (9th Cir. 2016).  A stay is therefore mandatory with respect to

25   Vasquez's individual claims.

26          However, Vasquez asserts each of his claims for relief on behalf of himself

27   ***and*** members of the putative class, and the arbitration agreement is silent

28   regarding class-wide arbitration.  The Supreme Court has held that "courts may

-45-

1    not infer consent to participate in class arbitration absent an affirmative

2    'contractual basis for concluding that the party *agreed* to do so.'" *Lamps Plus,*

3    *Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (emphasis in original) (quoting *Stolt-*

4    *Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).  The Court

5    therefore cannot also compel the arbitration of Vasquez's class-wide claims.

6    In view of the Court's decision to grant RSI's Motion to Compel

7    Arbitration with respect to Vasquez's individual claims, Vasquez cannot

8    continue to serve as class representative of the putative class.  *Cf. Berman v.*

9    *Freedom Fin. Network, LLC*, No. 18-cv-01060, 2019 WL 4194195, at *17

10   (N.D. Cal. Sept. 4, 2019) ("[T]he Ninth Circuit has suggested, without

11   expressly holding, that a class encompassing members with valid arbitration

12   agreements and others not subject to the arbitration agreements cannot be

13   certified." (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir.

14   2018)).  Accordingly, Vasquez's class claims are **DISMISSED** without

15   prejudice because Vasquez's inadequacy as class representative does not speak

16   to the merits of the class claims.

17   ## IV.  CONCLUSION

18   Based upon the foregoing, the Court hereby **ORDERS** as follows:

19   (1)    Vasquez's Motion to Remand is **DENIED**.

20   (2)    RSI's Motion to Compel Arbitration is **GRANTED**.  Pursuant to 9

21   U.S.C. § 3, Vasquez's individual claims are **STAYED** pending arbitration.

22   (3)    The parties are **DIRECTED** to file a Joint Status Report with the

23   Court on February 1, 2021, and every 90 days thereafter, reporting the status of

24   the arbitration proceeding.

25

26

27

28

(4)     Vasquez's class-wide claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

Dated:  November 12, 2020

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-47-